25 C.C.P.A.(Patents)

## In re SCHMIDT.

### Patent Appeal No. 3986.

Court of Customs and Patent Appeals.
June 6, 1938.

Karl Schmidt, pro se, and Evans & McCoy, of Cleveland, Ohio (Wm. C. McCoy, of Cleveland, Ohio, of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner rejecting claims 13 to 33, inclusive, of appellant's application for a patent. The grounds of rejection of the claims will hereinafter be stated.

Claims 13 and 33 illustrate the nature of the subject matter involved and read as follows:

"13. As a new article of manufacture, a golf club comprising a shaft and a head, the latter having the weight of its material permanently so distributed as to substantially equalize the turning moments of the masses of head and shaft materials about an axis extending from the approximate center of the grip portion of said shaft and crossing a spot or zone of the hitting face of the head that lies appreciably above the lower edge or sole and approximately centrally of the length of the face."

"33. A golf club head having a shaft portion and a body portion connected at one end to said shaft portion, said body portion having a striking face on which the dynamic center of the club head and shaft portion, when in play, lies in a medial plane normal to said striking face and which divides said striking face into two substantially equal striking areas, less of the material of the head being disposed between the hosel and the medial plane than on the other side of the medial plane whereby the portions of the club head and effective shaft portion on opposite sides of said medial plane have substantially equal

moments of inertia with reference to said plane during use of the club in play."

The references cited are: Govan, 1,-133,129, March 23, 1915; Graveure, 1,652,-404, December 13, 1927; McClure, 1,703,-199, February 26, 1929; Ogg et al., 1,917,-774, July 11, 1933; Spiker, Re. 19,178, May 22, 1934; Chasseloup-Laubat (Fr.), 473,-077, September 5, 1914.

The alleged invention is concisely described by the examiner as follows:

"The applicant's device is a golf club in which the center of impact of the club face is positioned at some point along a line vertical to the lower edge of the striking face which divides the geometric center of the striking face in half. The material in the club is so positioned that the weight of material on the toe side of the club is equal to the weight of material on the heel side of the club, the material in the hosel being considered as part of the heel. In other words, it is intended that the center of mass of the entire head will lie on the same vertical line as the intended center of impact.

"The sole of the head is inclined upwardly from the rear to the front of the club head so that the sole will have a minimum tendency to cut the turf and the head will glide smoothly over the turf when it contacts therewith."

The patent to Govan relates to a golf club and discloses the incorporation of metals of different weights in the rear face of a golf club in order to give a proper balance or weight to the head. The patent states:

"In carrying out my improvements, I propose to place apertures in the club, extending generally from the rear wall of the same and in some instances passing entirely through the body of such club whether of wood or iron, and to insert in such apertures disks exactly filling the area of the same, which disks are of varying thickness and weight and are designed to completely fill the aperture or cavity formed in the head, and by the disposition of the heavier of said disks to impart a proper balance or weight to the head of the club suitable to the person using the same. I propose to make these disks of various metals, such as aluminum, lead, iron, and the like, and to entirely fill the holes formed in the head of the club with the same. If a filling of lead and iron disks should render the club too heavy, certain of these disks can be removed and replaced by aluminum disks or disks of other material so that the desired filling can be effected to secure the desired weighting. As may be well understood, the clubs may be provided with one or a plurality of holes, as may be desired, to properly distribute the weight; the holes may extend through the head at a right angle or substantially a right angle to the handle or shaft of the club, or they may extend at various angles thereto."

The patent to Ogg et al. relates to golf clubs and is a patent from which claims 13 to 22 inclusive, here involved, have been copied by appellant for the purpose of instituting an interference.

The patent to Spiker relates to a golf putter in which there are provided, in the rear face of the head of the club, recesses or holes which may be plugged with lead or other heavy material in order to obtain or assist in obtaining the proper balance of the club. The face of the putter is provided with a multiplicity of parallel grooves.

The French patent to Chasseloup-Laubat relates to a golf club. The patent states:

"To perfect balance which is almost completely realized in the form of club used, one might place on the upper or lower face of the head some holes which might be filled with lead according to whether it is desired to increase or diminish the weight at the point considered."

This patent also discloses a curved surface of the head of the club, so arranged that the lower edge of the striking face, and consequently the front part of the head of the club, is spaced from the ground.

While the patents to McClure and Graveure are cited as references, they were not discussed by the examiner in his last statement (he having made two statements), or by the Board of Appeals in its decision, and we therefore deem it unnecessary to describe them.

The examiner rejected claims 13 to 22, inclusive, copied from the Ogg et al. patent, on the ground that the claims are not supported by appellant's application.

The examiner rejected claims 23 to 33, inclusive, for lack of invention over the

cited prior art. He used the Spiker patent as a basic reference for showing the conception of a club head with adjustable weights for changing the balance of the club head as desired.

The Board of Appeals affirmed the decision of the examiner upon all points, but used as a basic reference the Govan patent, not cited by the examiner, the board stating that it believed the Govan patent to be a more effective reference than the patent to Spiker.

We will first consider claims 13 to 22, inclusive, which were rejected for lack of disclosure in appellant's application. With respect to the rejection of these claims, the examiner in his statement said:

"Claims 13 to 22 are claims copied from the Ogg patent. They have been rejected in this case, however, because they do not read on applicant's disclosure. Applicant has arranged the weight in the club head so that the club head, which includes the hosel, will balance about a line vertical to the lower edge of the striking face. Applicant, it will be noted, balances the head only. The Ogg patent attempts to balance the head and shaft and has both members balanced about an axis which is not vertical to the lower edge of the striking face although the axis passes thru the geometric center of the striking face. The Ogg shaft is mounted at one side of the head. The axis about which the club is balanced is one which crosses the grip portion and also passes thru the central portion of the striking face. Thus it will be seen from the wording of the claims that the Ogg axis of balance cannot be the same as the axis about which the applicant balanced his club, also Ogg included the shaft in his balance system."

Upon the same point the Board of Appeals stated:

"Appellant presents a golf club in which the mass of material in the club head including the hosel is dynamically balanced about a plane, normal to the striking face at the center of said face. Claims 13–22, inclusive, are taken from the patent to Ogg et al., No. 1,917,774. Appellant recognizes that Ogg, in balancing his golf clubs, takes into account the weight of the club shaft and determines the best position for contact with the golf ball on the blade by passing an imaginary axis through a point on the blade and a point on the gripping portion of the shaft and illustrates a mechanism for so balancing the club. The method of determining the spot on the striking face above noted is fully set forth in the Ogg specification and also recited in the claims copied from Ogg.

"Appellant does not take into account the weight of the club shaft but he urges that the so called 'sweet spot' on his club is located in the same position on the striking face as the 'sweet spot' in the Ogg patent and that the light weight shaft has much less influence on the behavior of the club head than the weight of the material in the club and hosel itself. Obviously this is true, but the weight of the shaft has some effect. It is his position that although Ogg describes balancing his club considering both the weight of the shaft and the club head, as he also employs the usual shaft in his club head, the so called 'sweet spot' must then correspond in the two disclosures. We are not convinced of that fact nor do we consider the claims copied from Ogg properly read on appellant's construction. We have no reason to assume the location of the 'sweet spot' is the same in the two clubs and also the turning moments of the masses of head and shaft in both constructions are equalized 'about an axis extending from the approximate center of the grip portion of said shaft and crossing a spot or zone of the hitting face of the head' as defined in claim 13 on appeal and similar expressions in other claims copied from the Ogg patent."

It is appellant's contention that the Patent Office tribunals erred in the foregoing holding, and it is pointed out that Ogg et al., like appellant, changed the club head to obtain the new structure and the new results. Appellant further states in the brief of his counsel as follows:

"* * * Applicant's club head would be useless unless a shaft is used and when a conventional shaft is used the balance of the Ogg patent is obtained."

While it is true that Ogg et al. adjust the weight of the head in order to secure the proper balance of the head and shaft of the club, appellant's application relates to the balance of the head only. We do not think that we can take judicial notice that all golf shafts bear the same relation to the head of the club, but, however this may be, it is a fact that Ogg et al. include the shaft in their balance sys-

160

tem, whereas appellant does not. As claims 13 to 22, inclusive, each include the shaft in the balance of the club, and appellant's specification relates to the balance of the head only, we are in agreement with the Patent Office tribunals that claims 13 to 22, inclusive, should be rejected for lack of disclosure of all of the elements of said claims in appellant's specification.

With respect to claims 23 to 33, inclusive, we are not satisfied that the Patent Office tribunals erred in holding that they are unpatentable over the cited prior art.

Certainly the Govan and Spiker patents teach how the head of a golf club may be balanced to suit the ideas of any player. Even if the structures disclosed in said patents might not permit the exact balance of the head that appellant discloses, we think such structures could be easily modified, without the exercise of the inventive faculty, to produce the exact structure disclosed by appellant.

One skilled in the art might not realize the exact principles upon which such improved head operated, but the discovery of such principles would not constitute invention. In re Langdon, 77 F.2d 920, 22 C. C.P.A., Patents, 1245; In re Ebert et al., 57 F.2d 356; 19 C.C.P.A., Patents, 1087.

We think that if the involved claims were allowed, one carrying out the teachings of the references and securing a balanced club head satisfactory to him might find himself in conflict with said claims in a patent.

We are of the opinion that appellant has done nothing more, assuming all of the advantages of the club head disclosed by him, than to fix in definite terms a balanced club head that any one skilled in the art might, in view of the references, produce without the exercise of the inventive faculty.

With regard to the element relating to the inclination of the bottom surface of the club head, inclining upwardly from the back toward the striking face, we agree with the Board of Appeals that this is shown in the French patent to Chasseloup-Laubat.

We find no error in the decision of the Board of Appeals, and it is affirmed.

Affirmed.